14-2410-cv
Munn v. Hotchkiss Sch.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of February, two thousand eighteen.

PRESENT: JOHN M. WALKER, JR.,
　　　　　　GERARD E. LYNCH,
　　　　　　RAYMOND J. LOHIER, JR.,
　　　　　　　　　　*Circuit Judges*.

-----------------------------------------------------------------------

ORSON D. MUNN, III, AS PARENT & NEXT FRIEND OF C.M. & IND., CHRISTINE MUNN, AS PARENT & NEXT FRIEND OF C.M. & IND., CARA L. MUNN,

　　　　　　　　　　*Plaintiffs-Appellees*,

　　　　v.　　　　　　　　　　　　　　　　No. 14-2410-cv

THE HOTCHKISS SCHOOL,

　　　　　　　　　　*Defendant-Appellant*.

-----------------------------------------------------------------------

APPEARING FOR APPELLANT: WESLEY W. HORTON, Horton, Shields & Knox, P.C., Hartford, CT (Karen L. Dowd, Kenneth J. Bartschi, Horton, Shields & Knox, P.C., Hartford, CT, Aaron S. Bayer, Jeffrey R. Babbin, Wiggin and Dana LLP, New Haven, CT, *on the brief*).

APPEARING FOR APPELLEE: ANTONIO PONVERT III, (Alinor C. Sterling, *on the brief*) Koskoff Koskoff & Bieder, Bridgeport, CT.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Cara Munn was a student at The Hotchkiss School ("Hotchkiss") when she contracted tick-borne encephalitis ("TBE") during a school trip to China. *See Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 163 (D. Conn. 2014). Munn's parents sued Hotchkiss on behalf of their minor daughter, alleging that the school's negligence caused her injuries. A jury found for Munn and awarded her nearly $41.5 million in damages. Hotchkiss appealed, claiming that the judgment was in error because (1) Munn's injuries were not foreseeable, (2) Connecticut public policy did not support imposing such a duty on a school, (3) the non-economic damages awarded were excessive, (4) the district court abused its discretion by excluding or including expert testimony from various witnesses, (5) the jury instruction on foreseeability was misleading, (6) there was insufficient evidence that Munn was infected on Mt. Pan, where she claimed she was bitten, and (7) the district court erred by excluding a release that Munn and her mother signed.

On August 3, 2015, we held that there was sufficient evidence supporting the jury's finding that Munn's TBE injuries were foreseeable. *Munn v. Hotchkiss Sch.*, 795 F.3d 324, 329–30 (2d Cir. 2015). We also certified two questions to the Connecticut Supreme Court:

(1) Does Connecticut public policy support imposing a duty on a school to warn about or protect against the risk of a serious insect-borne disease when it organizes a trip abroad? (2) If so, does an award of approximately $41.5

million in favor of the plaintiffs, $31.5 million of which are non-economic damages, warrant remittitur?

*Id.* at 337.

In an August 11, 2017 opinion, the Connecticut Supreme Court responded that (1) Connecticut public policy "does not preclude imposing a duty on a school to warn about or to protect against the risk of a serious insect-borne disease when organizing a trip abroad," *Munn v. Hotchkiss Sch.*, 326 Conn. 540, 569 (2017), and (2) remittitur was not warranted because this "award, although sizeable, fell within the necessarily uncertain limits of just damages," *id*. Following the Connecticut Supreme Court's response, we have considered Hotchkiss's remaining arguments from its original and supplemental briefs and find them to be without merit. In doing so, we assume familiarity with the underlying facts and our prior opinion.

First, Hotchkiss argues that the district court's admission of expert testimony from one witness and the exclusion of such testimony from another was error. "We review a district court's determination to admit or exclude expert testimony under *Daubert* for abuse of discretion." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264 (2d Cir. 2002). Under this "highly deferential" standard, *Zuchowicz v. United States*, 140 F.3d 381, 386 (2d Cir. 1998), "[a] decision to admit or exclude expert . . . testimony is not an abuse of discretion unless it is 'manifestly erroneous,'" *Amorgianos*, 303 F.3d at 265. Federal Rule of Evidence 702 lays out the standards for admissible expert witness testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As a gatekeeper, a judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 580 (1993).

Hotchkiss contends that Munn's standard-of-care expert, Peter Tarlow, should not have been admitted as an expert because of his lack of experience on the responsibility of secondary schools conducting study abroad programs. As the district court pointed out, however, Tarlow had worked in the tourism management industry for over twenty years and had written books and scholarly articles about risk assessment for travel abroad generally. Tarlow used this general experience as a risk manager for adults to extrapolate what the specific standard of care for secondary schools would have been, and tested his opinions by conducting additional research into the practices of specific secondary schools. We are satisfied that this represented the "level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Accordingly, the district court's decision to admit Tarlow's testimony was not "manifestly erroneous."

4

Hotchkiss next argues that the district court erred by striking its expert on the standard of care, William Fluharty. This is a close question. The district court concluded that Fluharty "fabricated the supposed support for his opinion testimony and misrepresented his personal, lay opinions as reliable expert opinions." *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 203 (D. Conn. 2014). That conclusion is supported by the record. Testimony revealed that Fluharty's purported expertise came from communications with only four schools. Additionally, his testimony about the contents of his own survey was at best confused and at worst misleading, particularly as to the key question of whether his survey included questions about preventing insect-borne diseases. Even though we might have reached a different conclusion if we were determining in the first instance whether to exclude the entirety of Fluharty's testimony, we cannot say that in doing so the district court abused its discretion. *See Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984) (upholding exclusion of expert testimony "riddled with errors").

Second, Hotchkiss contends that the jury instruction on foreseeability was erroneous. "We review a jury instruction challenge *de novo,* but we will reverse only where the charge, viewed as a whole, demonstrates prejudicial error." *United States v. Coppola*, 671 F.3d 220, 247 (2d Cir. 2012). Hotchkiss argues that the foreseeability instruction was misleading and confusing. In particular, Hotchkiss challenges language in the middle of the charge, which, Hotchkiss argues, incorrectly suggested that if a harm is sufficiently grave, the risk need not be appreciable. The relevant sentences state:

> If the risk is an appreciable one, and the possible consequences are serious, the question is not one of mathematical probability alone. As the gravity of a possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to generate a duty of precaution.

App'x at 1411. Considering the charge in its entirety, as we must, we find no error. *See Coppola*, 671 F.3d at 247. The entire instruction repeatedly informed the jury that Hotchkiss could be liable only for harms it could foresee. *See* App'x at 1409 ("A person is negligent if the person, without intending to do harm, does something or fails to do something, a reasonable person *knew or should have known* creates an unreasonable risk of injury to another." (emphasis added)); *id.* at 1411 ("A defendant is not negligent unless he *knew or reasonably should have known of a risk*." (emphasis added)); *id.* ("The school can only be held responsible for failing to protect Cara against a risk that a reasonable school should have foreseen."). Moreover, the language that Hotchkiss challenges is taken nearly verbatim from Connecticut Supreme Court precedent. *See LePage v. Horne*, 262 Conn. 116, 131 n.16 (2002). Thus, taken as a whole, the instruction did not mislead the jury about Connecticut law on foreseeability.

Third, Hotchkiss challenges the sufficiency of the evidence that Munn was infected with TBE during the Mt. Pan trip. We will "overturn a verdict only if there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the appellant that reasonable and fair minded [persons] could not arrive at a verdict against the appellant." *Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005) (internal quotation marks and brackets omitted). "Although we review

6

the district court's denial of a Rule 50 motion *de novo,* we are bound by the same stern standards." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (internal quotation marks omitted).

We need not address whether this argument was waived because there was sufficient evidence in the record to support the jury's conclusion that Mt. Pan was where Munn was bitten. It was on Mt. Pan that for three to four hours Munn walked through a forested area—the type of environment where testimony established that infection with TBE is likely to occur. Munn testified that Mt. Pan was the only such area she visited while in China. Dr. Stuart Rose also testified that no other location on the trip would have been a likely place for an encounter with ticks. Furthermore, Munn testified that during that hike she was bitten by an insect on her left arm. That bite immediately started to itch, turned red, and swelled to two to three inches in diameter. Munn also developed symptoms of TBE 10 days after the trip to Mt. Pan, which, Dr. Rose testified, is consistent with TBE's incubation period. Given this evidence, we cannot say that there was "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." *Gronowski*, 424 F.3d at 292.

Lastly, Hotchkiss argues that the district court erred when it excluded a waiver that Munn and her mother signed purporting to release Hotchkiss from liability. The waiver "release[d] and discharge[d]" Hotchkiss from responsibility "except to the extent that the liability, damage, injury, loss, accident, or illness is caused by the sole negligence or

7

willful misconduct" of Hotchkiss and its agents. Attach. to Mot. in Lim. 15, ECF No. 143-1, 3:09-cv-00919. Hotchkiss agrees that the waiver did not preclude liability for claims resulting from "defendant's 'sole negligence.'" Reply at 23. Notably, Hotchkiss did not ask for a jury interrogatory specifically addressing the question of any possible comparative fault on the part of Munn's parents. In any event, we agree with the district court for the reasons stated in its thorough opinion that Hotchkiss "had no viable claim of parental comparative negligence." *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 193 (D. Conn. 2014). Furthermore, the only affirmative defense included in the jury instructions concerned Munn's potential comparative fault. So, when the jury found Munn "0%" responsible for her injuries, it necessarily concluded that Hotchkiss and Hotchkiss alone was liable for her injuries. *See id.* In other words, even if the waiver was unambiguous and not void—questions that we need not consider—the waiver could not have protected Hotchkiss from liability when, as here, the school was solely responsible for the student's injuries.

We have considered all of Hotchkiss's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court